Lawrence S. Lustberg, Esq.
Anne M. Collart, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Tel: (973) 596-4500
Fax: (973) 596-0545
*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SEACH OF ALL ELCTRONIC DEVICES ON THE PERSON OF WAEL HANA | Mag. No. 19-8415 |
| IN RE SEACH OF THE PREMISES LOCATED INSIDE 125 RIVER ROAD, SUITE 301, EDGEWATER, NEW JERSEY, 07020 | Mag. No. 19-8417 |
| IN RE SEARCH OF THE PREMISES LOCATED AT 100 ALEXANDER WAY, SUITE 710, EDGEWATER, NEW JERSEY, 07020 | Mag. No. 19-8418 |
| IN RE SEARCH OF THE PREMISES LOCATED INSIDE 125 RIVER ROAD, SUITE 301, EDGEWATER, NEW JERSEY 07020 | Mag. No. 19-8459 |
| WAEL HANA, Plaintiff, -v- UNITED STATES OF AMERICA Defendant. | Civil Action No.: 20-cv-__536 (CCC)__ |

### PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FORTHE RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(G)

# TABLE OF CONTENTS

                                                      **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

ARGUMENT .................................................................................................................................. 6

      1.      Legal Standard ................................................................................................... 7

      2.      Mr. Hanna's Property Must be Promptly Released ............................................ 11

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES
Page(s)

**Cases**

*Calero-Toledo v. Pearson Yacht Leasing Co.*,
  416 U.S. 663 (1974) .................................................................................................10

*Gmach Shefa Chaim v. United States*,
  692 F. Supp. 2d 461 (D.N.J. Mar. 3, 2010) ...........................................................7, 8

*Government of the Virgin Islands v. Edwards*,
  903 F.2d 267 (3d Cir. 1990) ...................................................................................7, 8

*Johnson v. United States*,
  971 F. Supp. 862 (D.N.J. 1997) .................................................................................12

*Mendoza v. United States Customs & Border Prot.*,
  2006 U.S. Dist. LEXIS 65174 (D.N.J. Sept. 12, 2006) .............................................10

*Peloro v. United States*,
  488 F.3d 163 (3d Cir. 2007) ...................................................................................7, 8

*Pitts v. United States*,
  228 F. Supp. 3d 412 (E.D. Pa. 2017) ........................................................................16

*In re Se. Equip. Co. Search Warrant*,
  746 F. Supp. 1563 (S.D. Ga. 1990) ..............................................................................7

*Shea v. Gabriel*,
  520 F.2d 879 (1st Cir. 1975) .......................................................................................8

*United States v. $59,074.00 in United States Currency*,
  959 F. Supp. 243 (D.N.J. 1997) .................................................................................10

*United States v. Abdus Shakur*,
  2009 U.S. Dist. LEXIS 26775 (D.N.J. Apr. 1, 2009) ......................................7, 12, 16

*United States v. Bein*,
  214 F.3d 408 (3d Cir. 2000) .........................................................................................9

*United States v. Comprehensive Drug Testing, Inc.*,
  579 F.3d 989 (9th Cir. 2009) (en banc) .......................................................................7

*United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*,
  461 U.S. 555 (1983) ............................................................................................11, 15

*United States v. James Daniel Good Real Property*,
    510 U.S. 43 (1993) ............................................................................................... 10, 11, 15

*United States v. Lamplugh*,
    956 F. Supp. 1204 (M.D. Pa. 1997) ..................................................................... 8, 9, 12, 16

*United States v. Pantelidis*,
    335 F.3d 226 (3d Cir. 2003) ............................................................................................... 8

*United States v. Premises Known as 608 Taylor Ave., Apartment 302*,
    584 F.2d 1297 (3d Cir. 1978) .................................................................................... *passim*

*United States v. Wall*,
    2006 U.S. Dist. LEXIS 36012 (D. Del. June 2, 2006) ................................................ 13, 14

**Statutes**

18 U.S.C. § 371 ................................................................................................................... 2

18 U.S.C. § 951 ................................................................................................................... 2

18 U.S.C. §§ 981-983 ....................................................................................................... 15

21 U.S.C. § 844 ................................................................................................................... 2

21 U.S.C. § 881(d) ............................................................................................................ 11

22 U.S.C. § 612 ................................................................................................................... 2

22 U.S.C. § 618(a)(1) .......................................................................................................... 2

**Other Authorities**

*Return of Surrendered Passports*, U.S. State Dep't, Bureau of Consular Affairs,
    https://travel.state.gov/content/travel/en/passports/legal-matters/surrendered-
    passport.html .................................................................................................................. 11

**Rules**

Federal Rule of Evidence 1003 ......................................................................................... 12

Federal Rule of Criminal Procedure 41(g) ................................................................ *passim*

Federal Rule of Criminal Procedure 41(e) ......................................................................... 8

**Constitutional Provisions**

Fifth Amendment .............................................................................................................. 10

Movant-Plaintiff Wael Hana ("Mr. Hana") respectfully submits this memorandum of law in support of his Motion for the Return of Property pursuant to Federal Rule of Criminal Procedure 41(g).

**PRELIMINARY STATEMENT**

In late November 2019, the Government, pursuant to a search warrant, entered Mr. Hana's work and home and seized significant amounts of property, including cell phones, computers, internet servers, business documents, cash, gifts for his mother, and his passport. After executing the warrants and seizing Mr. Hana's property, the Government went silent, initially ignoring Mr. Hana's efforts to contact the Assistant United States Attorneys who are handling the case. When, finally, almost a month after the search and seizure, counsel for Mr. Hana was able to speak to the Government's lawyers and request the return of his property, they either refused to return his property, or would not provide any timeframe for doing so, even though they acknowledged that Mr. Hana has not been designated a target of the Government's investigation at this time and made no suggestion that the items were somehow subject to forfeiture.

This is entirely inappropriate. The law is clear that the Government cannot simply seize and retain the property of an uncharged and presumptively innocent person in this way. In particular, the Government cannot indefinitely retain property which can reasonably be copied or imaged, so as to preserve its putative evidentiary value; in this case, that includes both the electronic devices and business documents, which Mr. Hana requires in order to stay in business, as well as his passport, which he requires in order to travel on such business; this is especially so given the Government's statements that it does not seek to curtail Mr. Hana's ability to pursue his business or his freedom of movement. These items can and should therefore be immediately copied and returned; the Government has provided no rationale for not doing so or for not doing

so promptly. Other items, such as jewelry that Mr. Hana purchased for his mother, have no conceivable relationship to a criminal investigation and should be immediately returned; the Government has not even responded to that request. In sum, the Government simply cannot, without bringing charges, continue to withhold Mr. Hana's property indefinitely, as it clearly is doing here.

## STATEMENT OF FACTS

Mr. Hana is a United States citizen and Egyptian National who lives in Edgewater, New Jersey. Hana Dec. ¶ 1. He is the president and founder of IS EG Halal, which is the only private company authorized by the Egyptian Ministry of Agriculture to certify halal food[1] imported into Egypt. *Id.* ¶¶ 2–3. IS EG Halal is headquartered in Edgewater, New Jersey, and has offices in Montevideo, Uruguay and San Paolo, Brazil. *Id.*

On November 20, 2019, this Court signed warrants authorizing the search of two premises connected with Mr. Hana: IS EG Halal headquarters, located at 125 River Road, Suite 301, Edgewater, New Jersey 07020, and his residence, at 100 Alexander Way, Suite 710, Edgewater, New Jersey 07020. Lustberg Dec. ¶ 4; *see also id.* Exhs. A–C; Hana Dec. ¶¶ 1, 4. The search warrants authorized the seizure of evidence relating to violations of 18 U.S.C. §§ 371 and 951; 21 U.S.C. § 844; and 22 U.S.C. §§ 612 and 618(a)(1). Lustberg Dec. ¶ 5.

As the inventories of the items seized during the searches show, the Government seized a number of items from the two properties, including cell phones, computers, tablets, USBs, business documents, folders, notepads, a photo album, $5,943.00 in cash, a "dark green substance" with a "golden cigarette," jewelry, and Mr. Hana's passport. *Id.* ¶¶ 7, 9; *id.* Exhs. E,

---

[1] Halal food is food which is prepared according to Islamic law as defined in the Quran. Hana Dec. ¶ X. Halal literally means "permissible"; Muslims are prohibited from ingesting products which are not halal. *Id.*

2

F. When the Government seized this property, it promised Mr. Hana that it would return his phone within a day, and the rest of his property shortly after Thanksgiving. Hana Dec. ¶ 12.

For weeks after executing the search warrant and seizing Mr. Hana's property, the Government refused to respond to inquiries from the undersigned counsel for Mr. Hana, who was consistently attempting to contact the appropriate authorities: calls to both prosecutors and the searching agents, who had left their contact information with Mr. Hana so that he could be in touch with them, went unanswered. Lustberg Dec. ¶¶ 10–11. Nor, obviously, did the Government bring charges against Mr. Hana, or even seek to interview him, though he offered to speak to and cooperate with the investigation in any way he could. *Id.* ¶ 13.

Indeed, over the course of the three weeks it took the Government to finally discuss this case, Mr. Hana's counsel sent emails to two separate Assistant United States Attorneys in the District of New Jersey and called the FBI agents involved in the initial search, repeatedly requesting an opportunity to discuss the case with the Government. *Id.* ¶ 11; *see* Exh. G. Those efforts were unsuccessful because the Assistant United States Attorneys from the Southern District of New York were not only unresponsive, but took steps to avoid being contacted; one of them actually requested that the Assistant United States Attorney in the District of New Jersey, with whom Mr. Hana's counsel was in contact, not give her name to Mr. Hana or his counsel. *Id.* ¶ 11. When Mr. Hana threatened to file a motion, the Government's lawyers finally responded, contacting counsel at 5 p.m. on Friday, December 13 with a request that the parties schedule a phone call for the next week. *Id.* ¶ 12; *see also id.* at Exh. H.

When, finally, on December 17, 2019, after some three weeks of trying, Mr. Hana's counsel was able to speak to the Assistant United States Attorneys from the Southern District of New York who are handling the case, the Government advised Mr. Hana's attorney that

Mr. Hana is not a target of its investigation and that he is free to travel as he would like, but that it would not return Mr. Hana's passport, on the ground that it was being withheld as evidence; the Government refused to photocopy the passport so as to preserve it for evidentiary purposes, but instead recommended that Mr. Hana apply for a new one, which Mr. Hana has done, albeit so far unsuccessfully. *Id.* ¶ 13; Hana Dec. ¶ 22. Mr. Hana then, at the Government's request, sent the Government a detailed list of the items he would like returned, including computers, business documents, USBs, internet servers, cellphones, documents from the Egyptian Embassy, a photo album, jewelry (such as earrings which he purchased as a Christmas gift for his mother), a tablet, and his passport. Lustberg Dec. ¶ 14. In response, the Government continued to ignore his communications; it did not respond to his list until three days later, and then only to acknowledge that it would eventually return his electronic devices, while ignoring his other requests. *Id.* ¶ 15. It then failed to respond for ten days to Mr. Hana's request that it provide a timeframe within which the devices would be returned, before ultimately refusing to provide any form of a schedule for the return of the property. *Id.* ¶ 16. The property has still not been returned, even after additional inquiries, making this motion necessary.

The seized items are vital to the continued operation of IS EG Halal. Mr. Hana travels approximately four times a year to Latin America for weeks at a time to meet with clients, providers, and slaughterhouses in order to negotiate contracts and coordinate logistics such as allocating personnel to effectively produce and ship large tonnages of beef and chicken. Hana Dec. ¶¶ 5, 13–15. Mr. Hana has already missed two key meetings in Latin America as a result of the Government's continued seizure of his passport. In early December, the Colombian and Brazilian governments held meetings with their Egyptian counterparts to discuss trade and requested that IS EG Halal attend. *Id.* ¶ 14. Mr. Hana had to send a surrogate because he could

not travel to Latin America, and the officials at the meeting were clearly offended that IS EG had not sent its president to such key meetings. *Id.*. One Egyptian general who had been sent to assist with the discussions in Brazil was especially disgruntled. *Id.* Mr. Hana also plans to travel to India as soon as possible in order to launch an IS EG branch there. *Id.* ¶¶ 5, 13. He also needs to travel to Egypt because he is considering launching a joint venture with his brother which would involve purchasing a wheat and flour factory. *Id.* ¶¶ 9, 16.

The Government's continued possession of Mr. Hana's desktop computers, servers, USBs, and business documents has also significantly disrupted IS EG Halal's business. The result has been "chaos" within the company. *Id.* ¶¶ 18–19. This is not surprising: the documents seized by the Government include all of IS EG Halal's authorization letters which allow the company to import goods into Egypt, as well as all of the company's billing and shipping records. *Id.* These authorization letters are necessary in order to clear the containers for approval at Egypt's ports. *Id.* ¶ 18. While Mr. Hana has serial numbers corresponding to the letters which he can use to deliver goods at Egyptian ports, he does not have such numbers for every shipment, so he is frequently required to ask customers and providers to send him copies of the letters, which makes him and his company appear incompetent and unprofessional. *Id.* Additionally, without those letters and the shipping and billing records for the transactions at issue, the company is unable to confirm the contents of shipments, or those shipments' slaughter dates or estimated times of arrival. *Id.* ¶ 19. Often the company is required to take its providers' and customers' word as to when a shipment should have arrived, what it should have contained, or whether it is expired, which makes the company appear unprofessional and puts it at a disadvantage when its counterparts seek to take hard negotiating positions. *Id.* Mr. Hana kept copies of these documents on his work servers and computers, but the Government seized those

5

as well. *Id.* ¶ 19. And the seizure of Mr. Hana's iPhones and his tablet, which are his communication devices for work, has further impaired his ability to conduct his business and personal affairs. *Id.* ¶¶ 8, 10, 17.

The disruption has also been difficult for Mr. Hana's employees. Though he purchased new computers, servers, and other materials so that they could continue working, many of them felt that they had to quit because they were concerned that the company was being investigated by the Government. *Id.* ¶ 20. Those who remain are constantly fielding billing, shipment, and authorization questions which they cannot answer because the Government seized the relevant records. *Id.*

Mr. Hana furthermore needs many of his possessions for his personal life. He has a large family, all of whom live in Egypt, and he understandably wishes to visit them, which he cannot do without a passport. *Id.* ¶ 16. Mr. Hana makes a significant effort to stay connected both to his family and the Egyptian community and church, and his inability to travel prevents him from doing so. *Id.* ¶¶ 6, 16. He needs his Mac Mini and Samsung phone, which he uses for personal internet browsing and communications. *Id.* ¶¶ 8, 10, 17. He has also requested that the Government return his jewelry, which includes a chain that he purchased in Italy; four watches, two of which are Rolexes that he received as gifts and therefore hold sentimental value; and a pair of earrings that he had custom designed for his mother for Christmas, and which cost approximately $15,000. *Id.* ¶ 21.

## ARGUMENT

Mr. Hana is entitled to the return of his property pursuant to Federal Rule of Criminal Procedure 41 because (1) his right to the property outweighs the Government's minimal interest in continuing to withhold it, and (2) the Government can return the property while at the same time taking reasonable steps to preserve it as evidence even if it is returned to Mr. Hana's

6

possession. Fed. R. Crim. P. 41(g) ("A person aggrieved by . . . the deprivation of property may move for the property's return.").

1. **Legal Standard**

The law is clear: "the government may not by exercising its power to seize, effect a *de facto* forfeiture by retaining the property seized indefinitely." *United States v. Premises Known as 608 Taylor Ave., Apartment 302*, 584 F.2d 1297, 1302 (3d Cir. 1978); *see also Government of the Virgin Islands v. Edwards*, 903 F.2d 267, 273 (3d Cir. 1990); *Gmach Shefa Chaim v. United States*, 692 F. Supp. 2d 461, 467 (D.N.J. Mar. 3, 2010) (when no criminal proceedings are in effect against the plaintiff, the Government may not continue to retain property that has been seized unless it is "reasonable under all the circumstances"); *United States v. Abdus Shakur*, 2009 U.S. Dist. LEXIS 26775, at *3 (D.N.J. Apr. 1, 2009) ("The burden is on the government to produce evidence that there is a 'legitimate reason' to retain [the] property. [Without] evidence that [the] property . . . constitutes contraband or is subject to forfeiture . . . . [it] must be returned."); *In re Se. Equip. Co. Search Warrant*, 746 F. Supp. 1563, 1574 (S.D. Ga. 1990) (even during ongoing investigation, continued retention of the property can be unreasonable if Government's legitimate interests can be satisfied through preservation of a copy for future use). Thus, the Federal Rules of Criminal Procedure explicitly provide the right of a "person aggrieved by . . . the deprivation of property" to "move for the property's return" regardless of the lawfulness of the original seizure. Fed. R. Crim. P. 41(g).[2]

---

[2] This Court has jurisdiction over this civil claim pursuant to Federal Rule of Criminal Procedure 41(g) because such motions are "generally considered an equitable complaint." *Gmach Shefa Chaim*, 692 F. Supp. 2d at 469 ("such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction") (quoting *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1001 (9th Cir. 2009) (en banc)). They are thus properly filed "in the district where the property was seized" and initiate "a civil proceeding for equitable relief" "even when there are no criminal proceedings pending against the movant." *Peloro v. United States*, 488 F.3d 163, 172-73 (3d Cir. 2007) (citations omitted). Since Mr. Hana's property was seized

7

Under this Rule, the Government may not impose an impermissible burden by holding property "for an unreasonable amount of time." *608 Taylor Ave*, 584 F.2d at 1302 (citing *Shea v. Gabriel*, 520 F.2d 879, 882 (1st Cir. 1975)).[3] In order to demonstrate that it has not withheld property for an unreasonable amount of time, the Government must justify its decision not to return the property by demonstrating that (1) its continued detention is reasonably related to the needs of its investigation; (2) those needs are not outweighed by the plaintiff's interests; and (3) the property's evidentiary value cannot be preserved by reasonable alternatives. *608 Taylor Ave.*, 584 F.2d at 1303-04; *see also Edwards*, 903 F.2d at 273 ("reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property") (quoting Fed. R. Crim. P. 41, Advisory Committee Notes, 1989 Amendments); *id.* at 273-74 (plaintiff's possessory right outweighed government's complaint that it could not confirm that he actually owned the property); *Gmach Shefa Chaim*, 692 F. Supp. 2d at 467 (the court evaluates "whether the Government's continued retention of the property is reasonable under all the circumstances"); *United States v. Lamplugh*, 956 F. Supp. 1204, 1208 (M.D. Pa. 1997) (noting that it "is difficult to understand how the government's interest would not be equally served by photographing the evidence and recording serial numbers" because relevant facts "would thus be memorialized in an admissible form"); *id.* at 1207 ("protracted delay," lack of "evidentiary

---

in New Jersey, this court has subject matter jurisdiction over this proceeding. *Id.* If the court grants the motion, it "must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g).

[3] *608 Taylor Ave* remains the test in the Third Circuit despite the fact that Federal Rule of Criminal Procedure 41(g) has been amended since it was decided. *Edwards*, 903 F.2d at 273. Under the version in effect at the time of *608 Taylor Avenue*, the Rule was limited to motions under Rule 41(e) for the return of illegally seized property; under the 1989 Amendment, it now applies to legally seized property as well. *Edwards*, 903 F.2d at 272–73. Later amendments moved the relevant provision from subsection (e) to subsection (g). *See United States v. Pantelidis*, 335 F.3d 226, 231 n.2 (3d Cir. 2003).

value" in seized property, and alternative option of simply photographing evidence outweighed government's insistence that it would eventually bring tax evasion and forfeiture claims).

The Third Circuit has explained that while the Government could seize a car in order to lift fingerprints from it, it could not refuse to return the car until trial if it could preserve the full evidentiary value of the property by photographing the fingerprints, because in that case "[t]he innocent bystander's interest in the use of his automobile would then clearly outweigh any incidental benefits to the prosecution." *608 Taylor Avenue*, 584 F.2d at 1303; *see also Lamplugh*, 956 F. Supp. at 1208 (same). Similarly, the 1989 Advisory Committee Notes to Rule 41(g) explain that when the Government can preserve copies for future use that are the evidentiary equivalent of the detained property, it must return the property to its rightful owner. *See* Fed. R. Crim. P. 41(g), Advisory Committee Notes, 1989 Amendments. The notes make clear that "if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." *Id.* Of course, the Court can protect both parties' interests by "impos[ing] reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g); *see id.*, Advisory Committee Notes, 2009 Amendments (such conditions are to be imposed "on a case by case basis," "fashioning an appropriate remedy," which "tak[es] into account the time needed to image and search the data and any prejudice to the aggrieved party"); *see also United States v. Bein*, 214 F.3d 408, 413 (3d Cir. 2000) (proceedings pursuant to Rule 41(g) are "general equitable actions" so courts may fashion appropriate remedies); *608 Taylor Ave.*, 584 F.2d at 1304 (if only government interest is use as evidence, "the court should determine if this interest might be as well served by such alternative methods preserving the evidentiary value of the seized property").

9

Though the Federal Rules expressly provide a vehicle for return of seized property, and although the Government has not suggested that the property seized would be subject to forfeiture, challenges to forfeiture proceedings are instructive here, where the Government has effected the same result by its indefinite seizure. *608 Taylor Ave.*, 584 F.2d at 1304–05 ("[A]t least in the context of a forfeiture, courts have found that due process requires the prompt institution of proceedings. The reasoning of those cases could well apply to the government's holding of property for use at trial."); *see also Mendoza v. United States Customs & Border Prot.*, 2006 U.S. Dist. LEXIS 65174, at *19-20 (D.N.J. Sept. 12, 2006) ("Due process standards encompass the timeliness of the administrative forfeiture."); *United States v. $59,074.00 in United States Currency*, 959 F. Supp. 243, 250 (D.N.J. 1997) ("Due process concerns are implicated where there is a delay between the seizure of the property and the postseizure filing of a judicial forfeiture action."). In that context, the Fifth Amendment generally requires pre-deprivation notice and a hearing absent extraordinary circumstances. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993). This is a central component of due process, the purpose of which "is not only to ensure abstract fair play to the individual," but also "to protect his use and possession of property from arbitrary encroachment – to minimize substantively unfair or mistaken deprivations of property." *Id.* Of course, the Supreme Court has recognized "extraordinary situations" where there exists a "valid governmental interest" that justifies postponing a hearing until after a seizure. *Id.*; *see, e.g., Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974) (Government could seize yacht subject to civil forfeiture without prior notice or hearing due to nature of property). But even where the Government has a reasonable belief that the seized property, for example, results from proceeds of illegal activity and is therefore subject to forfeiture, the Constitution requires that a dispossessed property owner

receive "a meaningful hearing at a meaningful time." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 563 (1983); *see also Good Real Prop.*, 510 U.S. at 53-62 (post-deprivation process insufficient for real property subject to civil forfeiture under 21 U.S.C. § 881(d)).

2.  **Mr. Hanna's Property Must be Promptly Released**

These principles establish that the Government must return Mr. Hana's property forthwith. As an overarching matter, the only legitimate interest offered by the Government is a possible future evidentiary one, and even that is not particularized, as the Government failed to respond to Mr. Hana's requests as to certain items (*e.g.*, jewelry). Lustberg Dec. ¶¶ 13-15. Mr. Hana, by contrast, has a significant personal and business interest in the return of each of the items requested:

First, the Government cannot continue to unjustifiably hold, and refuse to return, Mr. Hana's passport. Mr. Hana has not been accused of any wrongdoing (in which case, his passport would normally be surrendered as a condition of his release, subject to the Court's supervision and that of the United States Office of Pretrial Services)[4] and is, by the Government's own admission (and, indeed, its express suggestion), free to obtain a new passport and travel at his own discretion. Lustberg Dec. ¶ 13. It thus cannot claim that it is withholding his passport because he is a flight risk. The Government could easily preserve any evidentiary purpose that the document might serve – its stated purpose – by simply photocopying it. *See 608 Taylor Ave*, 584 F.2d at 1303 (noting that police would not be justified in keeping a car which

---

[4] Even if that were the case, it is not uncommon for it to be returned on a temporary basis upon an appropriate showing that the defendant requires it for international travel and will appear for future proceedings. *See Return of Surrendered Passports*, U.S. State Dep't, Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/passports/legal-matters/surrendered-passport.html (establishing procedure for release of surrendered passport to persons under supervised release program).

11

bore the fingerprints of a robber where they could simply photograph the fingerprints); *Johnson v. United States*, 971 F. Supp. 862, 869 (D.N.J. 1997) (government may retain copies of evidence and return the originals to their rightful owner); *Lamplugh*, 956 F. Supp. at 1208 (same); *see also* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original . . . ."). Indeed, even if the Government sought physical information on the passport such as fingerprints or DNA – which there is no indication is the case here – the Government could simply document that evidence and return the passport thereafter. *608 Taylor Ave.*, 584 F.2d at 1303. In sum, the Government has no basis for continuing to withhold Mr. Hana's passport, and therefore it must return it immediately. *Id.* (noting government must have a continuing interest, such as from a forfeiture of the property or an outstanding tax lien, to withhold property that has no evidentiary value); *Abdus Shakur*, 2009 U.S. Dist. LEXIS 26775, at *3 (government must return property if it cannot produce a legitimate reason for withholding it).

On the other hand, Mr. Hana has a strong interest in having his passport, which he needs to conduct IS EG Halal's international business, including overseeing its Latin America operations; that requires periodic travel to engage in trade discussions, coordinate shipping and slaughterhouse personnel needs, and negotiate contracts with clients and producers. Hana Dec. ¶¶ 5, 13–15. Mr. Hana also needs his passport so that he can travel to India to establish an IS EG Halal office, and to return to Egypt to establish a joint venture with his brother regarding a wheat and flour factory. *Id.* ¶¶ 13, 16. But even beyond business, Mr. Hana requires his passport for understandable personal reasons, for he wishes to visit his family and stay close with his relatives, all of whom live in Egypt. *Id.* ¶ 16. Mr. Hana's need for his passport in order to conduct business and engage in family life plainly outweighs whatever negligible – if there is any – benefit that the Government may derive from continuing to hold it, without charge.

12

Second, while the Government has promised to return Mr. Hana's electronic devices and storage media, recognizing, as it must, that it cannot hold them indefinitely, it has now been nearly seven weeks since they were seized, and inexplicably, no progress has been made; nor has the Government offered any schedule or timeframe, let alone a reasonable one, for their return. Lustberg Dec. ¶ 16. Without a deadline by which the Government must return Mr. Hana's devices, the Government is left entirely unaccountable to abide by standards of reasonable diligence and consideration for Mr. Hana's need to continue his business operations, which is undisputedly dependent upon his recovering these materials. *See, e.g., United States v. Wall*, 2006 U.S. Dist. LEXIS 36012, at *7 (D. Del. June 2, 2006) (setting thirty day deadline for return of property); *see* Advisory Committee Notes, 2009 Amendments (courts must take into account "the time needed to image and search the data and any prejudice to the aggrieved party"). In particular, IS EG Halal's ability to carry on its business is significantly disrupted, if not made virtually impossible, by the inability to access key documents such as billing and shipping records and the all-important authorization letters. *See* Hana Dec. ¶¶ 14–20 (describing how Mr. Hana's business has been thrown into chaos by the seizure of its computers, servers, and records). Without shipment and billing records, Mr. Hana cannot coordinate with his slaughterhouses and shipment companies to transmit halal products from Latin America to Egypt, and he and his employees cannot determine when shipments are expected to arrive or whether the cargo contained in a shipment is at risk of expiring or if it contains the wrong halal products. *Id.* ¶ 19. Without authorization letters showing that IS EG Halal shipments are authorized to be delivered at Egyptian ports, Mr. Hana is not even permitted to import anything whatsoever into the country. *Id.* ¶ 18. Mr. Hana has a right to know when he will receive his

property back and the Court, having authorized the search, can and should assure that, in the wake of that search, the Government handles the property in a lawful manner.

Third, the Government must return Mr. Hana's business documents, which, like the electronic devices and storage media described above, contain significant amounts of information necessary for the business to continue operating, such as authorizations from the Egyptian government, which are provided on a shipment-by-shipment basis, which allow the business to import halal food into Egypt. Hana Dec. ¶ 18. The Government seized all of these, along with every other piece of paper from IS EG Halal's Edgewater headquarters, and they must be returned for the business to continue. *Id.* The same is true of the notepads and folders which the Government seized, which (like the electronic devices seized) also include shipping and billing information and are thus equally important to Mr. Hana's business. *Id.* ¶¶ 19-20. All of these can be readily photocopied or imaged, so the Government has no need to continue to retain the originals and withhold them from Mr. Hana.

Finally, the Government must return Mr. Hana's personal possessions, such as his cash, Samsung cellphone, Mac Mini, and jewelry. *See* Hana Dec. ¶¶ 8, 10–11. Mr. Hana has a right to his cash, which was lawfully earned[5] at IS EG Halal and is rightfully his; nor is it of obvious evidentiary value, and the Government, though given the opportunity, has declined to share any information with counsel as to what it might even conceivably show. Hana Dec. ¶ 21; Lustberg Dec. ¶ 13. The Government should also be required to return his Samsung cellphone, which he uses as his personal phone. Hana Dec. ¶ 10. Perhaps most clearly of all, the Government must return Mr. Hana's jewelry, including the watches, chain, and earrings; the watches were either lawfully purchased or received as gifts, Mr. Hana purchased the chain in Italy, and he custom

---

[5] The Government has made no suggestion that this cash, or any of Mr. Hana's other seized property, was illegally obtained or is otherwise subject to forfeiture.

14

designed the earrings, which are worth approximately $15,000 dollars, as a special Christmas gift for his mother. *Id.* ¶ 21. The Government's continued possession of these items – and its complete failure to even attempt to explain its actions in this regard – renders its refusal to return them inexplicable at worst and perhaps even punitive, not only with regard to Mr. Hana, but also with regard to his mother who has now been deprived of her holiday gift.

As evidenced by the emails with Mr. Hana's counsel, Lustberg Dec. Exh. H, the Government has made no suggestion that the items seized would even be subject to forfeiture, let alone filed such an action. *See generally* 18 U.S.C. §§ 981-983. Of course, if the Government did have such a belief, it would be required to comply with the Due Process Clause and afford Mr. Hanna a meaningful and timely opportunity to be heard, at which proceeding the Court would be required to weigh the length of the delay; the reason for the delay; the defendant's assertion of his right; and prejudice to the defendant. *See $8,850*, at 564; *see also Good Real Prop.*, 510 U.S. at 53 (purpose of due process protections "is not only to ensure abstract fair play to the individual," but also "to protect his use and possession of property from arbitrary encroachment – to minimize substantively unfair or mistaken deprivations of property."). Surely Mr. Hanna is not entitled to less protection when the Government continues to hold his property without a pending (or even, apparently, an intended) forfeiture action, but for temporary, evidentiary purposes, which can be satisfied by the "reasonable conditions" available to the Court under Rule 41.[6] Fed. R. Crim. P 41(g) ("If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.").

---

[6] To the extent the Government's only justification for continuing to hold Mr. Hanna's property is "the possibility of forfeiture, the district court should insist on the prompt institution of the appropriate proceedings." *608 Taylor Ave.*, 584 F.2d at 1304.

15

## CONCLUSION

This case is disturbing indeed. In violation of the Federal Rules of Criminal Procedure and in effect implementing a forfeiture without due process of law, the Government has seized Mr. Hana's property, and then – even as it has not charged him – refused to engage with Mr. Hana or his counsel by way of providing some, even minimal, explanation for its actions. Certainly, almost two months after the seizure, it has categorically refused to return the property or even to provide a time frame for doing so with regard to the property which it has said it would return. Mr. Hana thus has no alternative but to turn to the Court for the vindication of his rights and the return of his important documents and ability to travel. Specifically, the Court should order the Government to return his passport, jewelry, and cash within two days and the remaining materials within ten days or such lesser period of time as will allow the Government to image or copy them. *See Pitts v. United States*, 228 F. Supp. 3d 412, 420-21 (E.D. Pa. 2017) (directing return of property as soon as practicable, but no later than 30 days after the plaintiff explained who the property should be sent to); *Lamplugh*, 956 F. Supp. at 1208 (directing return of cash property within ten days and directing Government to either show cause for withholding original documents or to provide photocopies to defendants at its own expense); *Abdus Shakur*, 2009 U.S. Dist. LEXIS 26775, at *3 (directing immediate return of property).

Dated:   January 14, 2020

Respectfully submitted,

Lawrence S. Lustberg

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Tel: (973) 596-4500
Fax: (973) 596-0545

*Attorneys for Plaintiff*